IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. _____

ROBERT GRUBB,

    Plaintiff,

v.

PRESIDIO INVESTORS, LLC, a Delaware limited liability company, and
VICTOR MASAYA, individually, and in his official capacity as managing director at Presidio
    Investors LLC,

    Defendants.

---

**PLAINTIFF ROBERT GRUBB'S
COMPLAINT AND JURY DEMAND**

---

Plaintiff, Robert Grubb, files this Complaint and Jury Demand and respectfully shows the Court as follows:

### I. PARTIES

1. Robert Grubb is, and was at all times relevant to this Complaint, a citizen of the state of Colorado. Mr. Grubb resides in Niwot, Colorado.

2. Presidio Investors, LLC ("Presidio") is a Delaware limited liability company with its principal place of business located at 1999 Harrison Street, Suite 650, Oakland, California 94612. Presidio is owned and operated by shareholders/members Chris Puscasiu and Karl Schade. Mr. Puscasiu is a citizen of California and may be served at his place of residence in Berkley, California or wherever he may be found. Mr. Puscasiu is not a citizen of Colorado. Mr. Schade is a citizen of Texas and may be served at his place of residence in West Lake Hills, Texas or wherever he may be found. Mr. Schade is not a citizen of Colorado. Presidio is therefore a citizen

of California and Texas for diversity purposes. Presidio's registered agent is The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

3. Victor Masaya currently resides in Austin, Texas and is a citizen of Texas. Mr. Masaya previously resided in and was a citizen of California. Mr. Masaya was not a citizen of Colorado at all relevant times and still is not a citizen of Colorado. Mr. Masaya may be served at his place of residence in Austin, Texas or wherever he may be found.

## II. JURISDICTION

4. The Court has jurisdiction over this lawsuit under 28 U.S.C §1332(a)(1) because the Plaintiff is a citizen of a different state than the Defendants, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

5. The Court has personal jurisdiction over Defendant Presidio because Defendant Presidio conducts substantial business in Colorado including operating a holding company whose sole asset is the equity shares of Alliant National Title Insurance Company, Inc ("Alliant"), which is headquartered in Longmont, Colorado. Additionally, this action arises from and relates at least in part to Defendant Presidio's conduct in the State of Colorado.

6. The Court has personal jurisdiction over Defendant Masaya because Defendant Masaya has personally conducted significant business in Colorado, including attending in-person meetings in Colorado to conduct such business. Additionally, this action arises from and relates at least in part to Defendant Masaya's conduct in the State of Colorado.

## III. VENUE

7. Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) and (2) because the contract at issue was executed in Colorado and subject to Colorado law. Furthermore, a substantial part of the events or omissions giving rise to this lawsuit occurred in this judicial district,

specifically in and around Boulder County.

## IV. GENERAL ALLEGATIONS

8. Robert Grubb co-founded Alliant with a small group of title insurance professionals, business leaders and entrepreneurs in 2005. Mr. Grubb and the other investors formed Agents Investors Group of America, LLC ("AIGA"), which owned Alliant from its inception until 2018. AIGA was dissolved in 2018.

9. Alliant is headquartered in Longmont, Colorado and provides property title insurance policies for property owners and lenders.

10. Mr. Grubb served as Alliant's Chief Executive Officer ("CEO") from 2005 until 2019. Under Mr. Grubb's leadership and direction, Alliant has grown into the largest independent title insurer in the nation with no direct or affiliate operations. Alliant's team covers five regions, and it is licensed in 24 states and the District of Columbia.

11. Defendant Presidio is a private equity company that primarily invests in entrepreneur-led businesses. Defendant Presidio's business activities includes investment services, pooled investment funds, financial services, and private equity endeavors. Chris Puscasiu is one of Presidio's Managing Partners and Defendant Victor Masaya is one of Presidio's Managing Directors.

12. On or about March 12, 2018, Defendant Presidio and Alliant entered into a Securities Purchase Agreement ("Purchase Agreement") in which Presidio Investors ATC Holdco, LLC ("Presidio Holdco") agreed to purchase from AIGA all of the issued and outstanding equity interests in Alliant.

13. Presidio Holdco is a wholly owned subsidiary of Presidio Investors ATC, LP. Presidio Holdco was created for the sole purpose of consummating, as the buyer, the Purchase

Agreement. As part of the formation, Presidio Holdco set up a Board of Directors with five (5) directors. The initial directors included Mr. Grubb, Mr. Puscasiu, Defendant Masaya, as well as two other directors.

14. Presidio Investors ATC, LP was formed on February 13, 2018 and is subsidiary of Presidio Investors ATC, GP, LLC. Presidio Investors ATC, GP, LLC is a limited liability company, formed on February 13, 2018 by Defendant Presidio in furtherance of its primary business activities. The members of Presidio Investors ATC, GP, LLC are all either members or employees of Defendant Presidio, including Mr. Puscasiu and Defendant Masaya.

15. As part of the transaction with Presidio, Mr. Grubb as the CEO of Alliant, agreed to roll over $1,100,000 of his $2,100,000 in equity in AIGA into Presidio Holdco.

16. On the date of purchase, July 31, 2018, three of Defendant Presidio's members/employees were named to the Alliant Board: Josef Auboeck, Defendant Masaya, and Mr. Puscasiu.

17. As part of the purchase, and known to Defendants, Alliant entered into an Employment Agreement ("Employment Agreement") with Mr. Grubb which provided that Mr. Grubb would continue to serve as the CEO of Alliant for a term of two years from the Effective Date, and such term would be extended by successive one year terms, if proper notice was not provided at least sixty (60) days prior to the expiration of the two year term ("Employment Period"). Exh. A., Employment Agreement, ¶¶ 2(a), 3(a).

18. The Effective Date of the Employment Agreement was July 31, 2018.

19. The Employment Agreement provided that Mr. Grubb as the CEO "shall have all duties and authority commensurate with the position of Chief Executive Officer and as shall be

assigned to him from time to time by the [Alliant] Board of Directors" ("Alliant Board"), and he was to report directly to the Alliant Board. Exh. A, ¶ 3(a)-(b).

20. The Employment Agreement further stated that it could only be amended or waived "with the prior written consent of [Alliant] (as approved by the [Alliant] Board) and [Mr. Grubb]." Exh. A, ¶ 20.

21. In addition to a salary, per the Employment Agreement, Mr. Grubb was eligible for an annual target bonus equal to 70% of his base salary. Exh. A, ¶4(b). For the 2019 bonus, the Alliant Board was required to set forth its criteria for the bonus in writing no later than October 1, 2018. For the 2020 bonus, the Alliant Board was required to set forth its criteria in writing no later than October 1, 2019. The Employment Agreement required the Alliant Board to determine, "*in good faith,*" whether Mr. Grubb "met the criteria of any annual bonus or whether an amount greater or less than the annual target bonus opportunity will be paid." (Emphasis added). *Id.*

22. All other Alliant executives who were eligible for the 2019 annual target bonus received 100% or more of that bonus pay.

23. The Employment Period was to continue unless Alliant or Mr. Grubb gave notice that the Employment Period would not be extended, or, unless Mr. Grubb's employment was terminated earlier (i) with or without Cause; (ii) when his resignation for Good Reason became effective; or (iii) due to his death or disability. Exh. A, ¶ 6(a). The definition of "Good Reason" included Alliant's "material violation of any provision of the Employment Agreement," a "material reduction in the responsibilities or job description of [Mr. Grubb] without [his] consent" or a reduction of Mr. Grubb's base salary by 10% or greater or a material reduction of benefits

unless the same reduction of benefits is applicable generally to all employees of Alliant. Exh. A, ¶ 6(h).

24.     In a circumstance involving a basis to resign for Good Reason, Mr. Grubb was required to provide written notice of resignation for Good Reason within thirty (30) days of the event giving rise to the Good Reason, and Alliant then had 15 days to cure the circumstances giving rise to the Good Reason, or pay certain amounts to Mr. Grubb. *Id.* If Mr. Grubb resigned for Good Reason, he was entitled to Accrued Obligations, a prorated Bonus, and certain other enumerated Severance Amounts, including payment of twelve (12) months' salary which would total in excess of $400,000. Exh. A, ¶ 6 (b)-(c).

25.     On September 18, 2019, Defendant Masaya, either individually or in his capacity as an employee of Defendant Presidio, and Defendant Presidio, both purporting to act as representatives of the Alliant Board, advised Mr. Grubb that he was immediately being replaced as Alliant CEO and instructed Mr. Grubb to empty his office as soon as possible.

26.     Defendant Masaya and Mr. Puscasiu offered Mr. Grubb a choice in response to his immediate removal as CEO: (1) continue under his current Employment Agreement (which provided a mechanism for Mr. Grubb to resign for Good Reason and receive compensation for the early termination of the Employment Agreement) or (2) modify his current Employment Agreement and extend the term of Mr. Grubb's employment beyond the current Employment Period.

27.     Mr. Grubb, reluctantly agreed to the change of his title, duties, and authority and agreed to forgo his right to resign for Good Reason and the benefits pursuant thereto in exchange for a modification of his Employment Agreement and a buy-down of his $1,100,000 equity investment.

28. As part of the modification of the Employment Agreement, Defendant Masaya and/or Defendant Presidio negotiated and agreed to buy-down $1,100,000 of Mr. Grubb's equity investment in Presidio Holdco, commensurate with his new position, and equal to others in similar positions.

29. Based on the decisions orchestrated and directed by Defendants, on September 25, 2019, Alliant publicly announced Mr. Grubb "has passed on operational duties as President and CEO of Alliant" and has been named "Vice-Chairman of Presidio ATC Holdco, LLC".

30. On October 1, 2019, Alliant announced David Sinclair was replacing Mr. Grubb as the CEO of Alliant.

31. Defendants' actions in removing Mr. Grubb from his position as CEO were made unilaterally and without prior written approval by the Alliant Board <u>and</u> Mr. Grubb as required by his Employment Agreement. Exh A, ¶ 20.

32. On October 4, 2019, almost 10 days *after* Defendants removed Mr. Grubb as CEO, the Alliant Board met to discuss Mr. Grubb's removal and proposed amendments to Mr. Grubb's and Mr. Sinclair's employment agreements. At this time, the Alliant Board approved removing Mr. Grubb as CEO, appointing Mr. Sinclair as CEO, and appointing Mr. Grubb as Vice-Chairman of Presidio Holdco, subject to the Compensation Committee and Mr. Grubb reaching a final agreement on the terms of his amended employment agreement.

33. The Alliant Compensation Committee met on October 10, 2019 to discuss the recommended terms to amend Mr. Grubb's Employment Agreement. At the meeting, Defendant Masaya prepared and presented a power point slide outlining the proposed terms of Mr. Grubb's amended employment agreement.

34. Key terms for the amendment to Mr. Grubb's Employment Agreement included the following:

    a. retaining full-time employment status at Alliant;

    b. changing from President/CEO to Vice Chairman of the Board;

    c. $175,000 base salary;

    d. eligibility for 100% of 2019 bonus;

    e. eligibility for up to $25,000 bonus in 2020 and 2021[1];

    f. all other benefits remain in place; and,

    g. retain currently vested options.

34. The approved term of the proposed amendment was to be from the effective date through December 31, 2021, with an option to renew for 1-year terms.

35. The proposed amendment was also contingent upon Presidio buying-down Mr. Grubb's equity as agreed upon.

36. The Alliant Compensation Committee voted on October 10, 2019 to recommend the Alliant Board approve (and/or approved themselves) the above changes, including the terms of the agreement, to Mr. Grubb's Employment Agreement.

37. As a 62-year-old, the extended term was very important to Mr. Grubb, as it allowed him to stay employed and, even more significantly, maintain his healthcare coverage beyond the term of his initial Employment Agreement.

38. Defendant Masaya was charged by the Alliant Compensation Committee with getting the amended Employment Agreement reduced to writing, agreed to by Mr. Grubb, and signed.

---

[1] These years were incorrectly reflected on the slide as "2021" and "2022".

39. From October 10, 2019 until May 4, 2020, Mr. Grubb actively and in good faith attempted to reach an agreement with Defendant Presidio and/or Defendant Masaya to amend his Employment Agreement in accordance with the Alliant Compensation Committee's approved terms. Though Mr. Grubb repeatedly attempted to finalize the amendment to his Employment Agreement, Defendants had no intention of honoring the directive of the Alliant Compensation Committee and Alliant Board as they had fraudulently and negligently misrepresented to all parties involved.

40. Defendants perpetuated a drawn-out subterfuge of negotiations for almost eight months. During this time, Defendants repeatedly delayed and failed to respond to emails and calls from Mr. Grubb and attempted to re-negotiate already approved changes to his employment agreement without approval from the Alliant Compensation Committee or Alliant Board. Defendants also refused to respond to Board of Director's and Alliant Compensation Committee members' inquiries regarding the status of the negotiations.

41. When the Alliant Compensation Committee approved the terms of the amendment to Mr. Grubb's Employment Agreement in October 2019, it instructed Mr. Grubb to return to them if he and Defendant Masaya could not come to an agreement. In April 2020, when his repeated attempts to communicate with Defendant Masaya failed, and he was consistently getting limited to no response from Defendant Masaya to his emails and voice messages, Mr. Grubb twice sought assistance from the Alliant Compensation Committee/Alliant Board. All of the Compensation Committee members except Mr. Masaya agreed to meet to discuss the outstanding issues relating to the amended Employment Agreement in an effort to finalize the agreement. Mr. Masaya, however, failed to respond to requests to schedule a meeting.

42. On May 4, 2020, Defendants' scheme culminated when Mr. Grubb received a letter from Defendant Masaya purporting to be a notice of termination of the 2018 Employment Agreement. Mr. Masaya fraudulently signed this purported notice of termination in his alleged capacity as Chairman of the Alliant Compensation Committee. However, when Mr. Masaya sent the letter, he was not the Chairman of the Alliant Compensation Committee and he did not have Board approval to terminate Mr. Grubb's Employment Agreement. The Chairman of the Alliant Compensation Committee does not have the authority to give notice of termination under the 2018 Employment Agreement without approval and direction and following a vote of the full Alliant Board.

43. By removing Mr. Grubb from his position as CEO, then intentionally engaging in delay tactics and failing to negotiate in good faith to reach an agreement on the terms of an amended Employment Agreement and equity buy-down as they represented to Alliant, Defendants attempted to prevent Mr. Grubb from exercising his contractual right to resign for Good Reason, which would have triggered the payment of a significant amount of compensation. Now, Alliant is purporting to say Mr. Grubb's failure to resign for Good Reason in September 2019 should prevent him from recovering his entitlements under the Employment Agreement.

44. Defendants' actions were without authority and were a direct and egregious interference with Mr. Grubb's Employment Agreement.

45. As a result of Defendants' fraud and misrepresentation, and of Alliant's breach of the Employment Agreement with Mr. Grubb, a breach which was induced by Defendants' intentional and improper interference, Mr. Grubb has suffered significant damages including the following:

a. Economic losses, including the salary and benefits from the continued employment with Alliant as reasonably expected but for Defendants' interference.

b. Economic losses associated with the failure to buy-down Mr. Grubb's equity as promised in response to his removal as CEO.

c. Special damages in the form of attorney's fees incurred as reasonably foreseeable:

   (1) in relation to the consummated Employment Agreement that Defendants' wrongful conduct caused Alliant to breach;

   (2) regarding the preparation and negotiation of the amended Employment Agreement, which Defendants had no intention of consummating;

   (3) to address or resolve the reliance and losses; and,

   (4) in relation to the Defendants' promises and their resulting acts or forbearances.

d. Pain and suffering reasonably expected to result from Defendants' interference and conduct.

e. Emotional distress reasonably expected to result from Defendants' interference and conduct.

f. Harm to Mr. Grubb's reputation reasonably expected to result from Defendants' interference and conduct.

## IV. GENERAL ALLEGATIONS

### FIRST CLAIM FOR RELIEF
### (Interference with the Performance of an Existing Contract)

44. Paragraphs 1 through 43 are incorporated herein by reference.

45. Plaintiff Robert Grubb had a written Employment Agreement with Alliant in which he was employed as the Chief Executive Officer of Alliant for an initial term of two years. Pursuant to the Employment Agreement, Mr. Grubb was to have the duties and authority commensurate with the position of CEO and was to report directly to the Alliant Board. The terms

of the Employment Agreement could not be amended without the prior written consent of Alliant (as approved by the Alliant Board) and Mr. Grubb.

46. Defendants knew or reasonably should have known of the Employment Agreement, as described above.

47. Defendants, by their words and conduct, intentionally interfered with the performance of the contract so that Alliant did not perform, did not perform fully, or terminated the contract as described above.

48. Defendants' interference with Mr. Grubb's Employment Agreement was improper.

49. Defendants' interference with the Employment Agreement caused Mr. Grubb damages as described above.

**SECOND CLAIM FOR RELIEF**
**(Fraud - Misstatement of Material Fact)**

50. Paragraphs 1 through 49 are incorporated herein by reference.

51. Defendants falsely represented to Mr. Grubb and other members of the Alliant Board, that they would negotiate and enter into an amended Employment Agreement in accordance with the terms presented to and approved by the Alliant Compensation Committee.

52. This fact was material.

53. At the time the representation was made, the Defendants knew the representation was false in that they had no intention of negotiating and entering into an amended Employment Agreement with Mr. Grubb in accordance with the terms approved by the Alliant Compensation Committee.

54. The Defendants made the false representation with the intent that Mr. Grubb would rely on the representation and not exercise his right to resign for Good Reason which would trigger the payment of substantial severance amounts.

55. Mr. Grubb relied on Defendants' false representation.

56. Mr. Grubb's reliance on Defendants' false representation was justified.

57. Mr. Grubb's reliance on Defendants' false representation caused Mr. Grubb to suffer damages as described above, in an amount to be proven at trial.

### THIRD CLAIM FOR RELIEF
### (Negligent Misrepresentation)

58. Paragraphs 1 through 57 are incorporated herein by reference.

59. Defendants negligently misrepresented material facts to Mr. Grubb and to Alliant that Defendants would negotiate in good faith an amendment to Mr. Grubb's Employment Agreement.

60. Mr. Grubb reasonably relied on Defendants' representations.

61. Defendants' misrepresentations were made in the course of their business, profession, or employment.

62. Defendants made the misrepresentations for the guidance of others in their business transactions.

63. Defendants knew Mr. Grubb would rely upon their representations.

64. Mr. Grubb was injured as a result of his reliance and suffered the losses and damages described above, in an amount to be proven at trial.

### FOURTH CLAIM FOR RELIEF
### (Promissory Estoppel)

65. Paragraphs 1 through 64 are incorporated herein by reference.

66. Defendants made a promise to Mr. Grubb as described above.

67. Defendants reasonably should have expected that the promise would induce action or forbearance by Mr. Grubb.

68. Mr. Grubb reasonably relied on the promise to his detriment as described above.

69. As a result of Defendants' promise and Mr. Grubb's reasonable reliance upon that promise to his detriment, Mr. Grubb has suffered the damages described above in an amount to be proven at trial.

70. The promise must be enforced to prevent injustice.

## PRAYER FOR RELIEF

Plaintiff Robert Grubb respectfully requests the following relief:

a. a judgment in favor of Plaintiff and against Defendants;

b. an award of damages for Defendants' interference with the performance of the Employment Agreement between Alliant and Plaintiff;

c. an award of damages for Defendants fraudulent and negligent misrepresentations;

d. an award of damages and/or equitable relief to avoid injustice for the promises made by Defendants to Plaintiff;

e. prejudgment and post-judgment interest, to the fullest extent of the law;

f. costs of suit;

g. reasonable attorney fees, whether as special damages or otherwise, to the fullest extent provided by law or in equity; and,

h. such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated this 24th day of July, 2020

        Respectfully submitted,

        SAVRICK, SCHUMANN, JOHNSON,
        MCGARR, KAMINSKI & SHIRLEY, L.L.P.

        By:   /s/ Cristina B. McGarr
        Cristina B. McGarr, Attorney-in-Charge
        Colorado Bar No. 39515
        Phillisa Shoemaker
        Colorado Bar No. 27029
        Erin Morris
        Colorado Bar No. 51928
        250 Arapahoe Avenue, Suite 301
        Boulder, Colorado 80302
        Phone: (303) 718-6222
        Email: cristina@ssjmlaw.com
        Email: lisa@ssjmlaw.com
        Email: erin@ssjmlaw.com

        **ATTORNEYS FOR PLAINTIFF, ROBERT GRUBB**

**PLAINTIFF'S ADDRESS:**
  c/o SAVRICK, SCHUMANN, JOHNSON,
  MCGARR, KAMINSKI & SHIRLEY, L.L.P.
  250 Arapahoe Avenue, Suite 301
  Boulder, Colorado 80302